UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 08-10412 LTS

)
KRISTIN MALLOCH, )
    Plaintiff )
)
v. )
)
TOWN OF HANOVER, )
PAUL HAYES, CHIEF OF POLICE, )
and WANDA BARRON, )
PERSONNEL ADMINISTRATOR, )
    Defendants )
)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

The defendants, Town of Hanover, Paul Hayes, Chief of Police, and Wanda Barron, Personnel Administrator ("defendants"), submit this memorandum of law in support of their motion for summary judgment. See Fed.R.Civ.P. 56. As grounds, the defendants state that the plaintiff has failed to establish any of the alleged claims against them and that they are entitled to judgment in their favor as a matter of law.

**I. Concise Statement of Undisputed Material Facts[1]**

The defendant Paul Hayes was Chief of Police of the Police Department for the defendant Town of Hanover at times relevant. SOF, ¶ 1. The defendant Wanda Barron is the Personnel Administrator for the Town of Hanover. SOF, ¶ 2. The plaintiff Kristin Malloch is a police officer with the Police Department for the Town

---

[1] The facts in this section are drawn from the Defendants' Concise Statement of Undisputed Material Facts (hereinafter "SOF"). As required under summary judgment procedure, the undisputed facts must be interpreted in favor of the non-moving party. In stating the undisputed material facts, the defendants do not concede or rely on these facts for any purpose other than this motion for summary judgment.

of Hanover. She was the first full-time female police officer hired by the Town. SOF, ¶ 3. She was hired in 2004. Id. The plaintiff's brother and father were also members of the Department. Chief Hayes and the plaintiff's father have known each other for a long time. SOF, ¶ 4. Chief Hayes went to the plaintiff's wedding. Id.

On or about January 4, 2007, the plaintiff told Chief Hayes that she was pregnant. SOF, ¶ 5. The Chief said congratulations. SOF, ¶ 6. Chief said he would like to speak with the human resources person, Wanda Barron. The Chief wanted Barron to answer any questions the plaintiff might have and to apprise him of procedures to follow.[2] SOF, ¶ 7. The plaintiff said that would be fine. SOF, ¶ 6.

On January 8, 2007, the plaintiff met with the Chief and Barron. SOF, ¶ 9. Lieutenant Sweeney joined the meeting later. Id. After some conversation, the plaintiff asked how she could get out of the police cruiser. SOF, ¶ 10. The plaintiff was hoping for contract discussions and that some accommodation would be made for her when she could no longer work in the cruiser. Id. The plaintiff mentioned light duty or a temporary duty change.[3] Id.

It was explained to the plaintiff that the Town did not have light or modified duty. SOF, ¶ 11. It was not in the contract at that time. Id. A minimum of four police officers worked the day shift. SOF, ¶ 12. All police officer jobs within the department required working in a cruiser. Id. There were no officers permanently assigned to the station during a shift. Id.

---

[2] Barron had met with at least one other town employee, the health agent, to discuss her pregnancy and apprise her of available entitlements, whether she would qualify for leave and whether or not it would be paid. SOF, ¶ 8

[3] Light duty means dispensation from some of your essential job functions. Barron Depo, p. 25, Exhibit B.

2

The plaintiff suggested that she could come into the station and be a dispatcher, for example. SOF, ¶ 13. But, no police officers worked within the dispatch area during a shift. Id. The dispatchers were civilians and were part of a different union. Id.

Also, there was no one permanently assigned as the fingerprint officer, or booking officer for example. SOF, ¶ 14. Those officers with a specialization would be on patrol and, if a call for service came in, they would go to it. Id. There likewise was not a specific full-time slot dedicated to firearms licensing only. SOF, ¶ 15. Rather, Sergeant Rollins and the plaintiff handled firearms issues as they arose in addition to their other responsibilities. Id. The plaintiff received an extra $500 for this added responsibility. Id.

In terms of whether anyone working any of these positions would trade with the plaintiff, the plaintiff would have to go through the union. SOF, ¶ 16. The same is true with respect to one officer covering for another on a shift on a short-term basis. Id. The Town and police department did not get involved in such matters. Id.

The plaintiff also mentioned taking maternity leave under Chapter 149. SOF, ¶ 17. Barron explained that Chapter 149 provided only eight weeks, while the Family and Medical Leave Act provided twelve. Id. The Town follows the State and Federal guidelines in terms of the FMLA. SOF, ¶ 18. An employee can use accumulated time incorporated in the leave but the leave itself is otherwise unpaid. Id.

The plaintiff was early on in her pregnancy at the time of this meeting, and had not yet gone to her doctor. SOF, ¶ 19. As such, Barron considered some of her questions premature. Id. Barron told the plaintiff that, if there were a problem with the pregnancy in terms of her work, her doctor would be the one to make that

3

determination and would let them know. SOF, ¶ 20. The plaintiff indicated that she was confident that her doctor would write any kind of note that was necessary. SOF, ¶ 21. In response, Barron mentioned that, as a condition of a leave of absence, the Town physician, on contract with the Quincy Medical Center, would have the option of confirming what her doctor might say. SOF, ¶ 22. The plaintiff said she would not consent to such an examination, but would be willing to forward any records to the Quincy Medical Center. SOF, ¶ 23.

It was up to each department head to coordinate family medical leave for their department. SOF, ¶ 25. But, Chief Hayes had not had any employee taken FMLA leave. SOF, ¶ 24. The Chief said that he would get some information on the FMLA and that they would meet again. SOF, ¶ 24.

The Chief subsequently gave the plaintiff some FMLA forms that were to be completed by her doctor. SOF, ¶ 26. He did so because the plaintiff had broached the issue of her going out on FMLA leave at the meeting. Id. It was not a matter of Chief Hayes asking that the plaintiff go out immediately. Id. Rather, the forms were to help the plaintiff make a determination how the leave was going to work and how it was going to take place. Id.

In the meantime, the plaintiff continued to work in her regular shift in the cruiser. SOF, ¶ 27.

A few weeks after providing the plaintiff the FMLA forms, the Chief later met with the plaintiff. SOF, ¶ 28. The plaintiff told the Chief she had not yet filled out the forms. Id. The Chief explained that he was not trying to give the plaintiff a hard time and that he was only trying to set something up in terms of when she was going out and what was going to happen. Id.

At various times thereafter, the Chief emailed the plaintiff in follow-up on the FMLA forms. SOF, ¶ 29. For example, in an email dated February 20, 2007, the Chief asked if the plaintiff had given the forms to her doctor. Id. The plaintiff responded that she was going to obtain a fitness for duty slip from her doctor so she didn't bring the FMLA forms with her to that visit. Id. In a follow-up email, the Chief explained that the doctor would still need the forms to return for when it was determined that the plaintiff was no longer fit for duty. SOF, ¶ 30.[4]

At some point, Chief Hayes and the plaintiff discussed a plan with the plaintiff for when she was not able to work in a cruiser. SOF, ¶ 31. If plaintiff was not fit for duty at some point short of birth, the plaintiff could use sick time, which was not the norm. Id. She would be allowed to use compensatory time and her vacation time. Also, Hayes said that, since the contract did not allow for light duty for the police department, he would see if the plaintiff could work at some other position in the Town like the School Department at the same salary so she could get a paycheck through the entire pregnancy. SOF, ¶ 32. The plaintiff would have lost no time or grade and her position would have remained while she was out. Id.

The plaintiff though wanted a police officer reassignment. She spoke with Dan Salvucci, union president, asking if the Union would object if she requested a reassignment in writing if she made it clear it was not precedent setting. SOF, ¶ 33. Salvucci said she could write a letter. Id.

By letter dated April 3, 2007, the plaintiff told the Chief that she planned to stop working in the cruiser as of May 19, 2007 and that she was asking for

---

[4] According to the plaintiff, everything was a "hassle" because she kept getting emails from Chief, but then she admits that she received only 5 emails from him. Malloch Depo, pp. 84-85, Exhibit C.

consideration of a reassignment of duties within the department for a 30-45 period. SOF, ¶ 34. The plaintiff acknowledges that she was asking to be assigned to a house office position, and that the Town didn't have such a position. SOF, ¶ 35. In this letter, she acknowledges that she had committed to keeping the Chief informed regarding her status for work. SOF, ¶ 34.

Chief Hayes forwarded the plaintiff's letter to the town administrator and Barron. SOF, ¶ 36. The town administrator responded that the Chief should inquire of the union whether it was interested in opening up the contract to a light duty clause. SOF, ¶ 37. Union president Salvucci advised the Chief that the union was not interested in opening the contract up for a light duty clause. SOF, ¶ 38.

In the interim, on April 14, 2007, the plaintiff's cruiser was rear-ended as she was turning into the police station. SOF, ¶ 39. She was taken by ambulance to a hospital. SOF, ¶ 40. The Chief visited her there. Id. The plaintiff was placed on a soft neck brace for a few days and her right wrist was bandaged. SOF, ¶ 41.

The plaintiff subsequently was seen at the Quincy Medical Center where she was prescribed physical therapy for her hand and wrist. SOF, ¶ 42. The plaintiff went out on disability or Injured on Duty ("IOD") pursuant to G.L. c. 41, § 111F. SOF, ¶ 43.

The Chief called the plaintiff about three times while she was out (before she filed her MCAD complaint), saying that he hoped she was feeling better and that they would see her soon. SOF, ¶ 44. Plaintiff says the Chief should not have called her or her physical therapist. Id. It is customary and routine, however, for the Town to receive periodic updates from a physician for a police officer who is out on injured on duty under § 111F. SOF, ¶ 45. Indeed, Chief Hayes had asked for medical

updates for other officers suffering physical problems and who were out of work injured on duty. SOF, ¶ 46.

On June 6, 2007, the plaintiff filed a complaint with the MCAD against the Town, the Chief, and Barron, claiming discrimination on the basis of sex in violation of G.L. c. 151B, § 4(1) and Title VII. MCAD complaint, Exhibit L. Among other things, she complained of a hostile work environment "by harassing regarding her injury status" and "by attempting to require Malloch return to work early from her injury so she can be placed on unpaid Family Medical Leave through FMLA." SOF, ¶ 47.

The plaintiff remained out injured on duty for the remainder of her pregnancy. SOF, ¶ 48. When an officer is out injured on duty, the state does not take taxes out of the officer's paycheck so the plaintiff made more during this period of time. SOF, ¶ 49. She does not claim any lost wages. Id. Also, the plaintiff never filed a union grievance in terms of any of the foregoing because there wasn't anything to grieve. SOF, ¶ 52.

The plaintiff's son was born on August 24, 2007, which she was out injured on duty. SOF, ¶ 50. The plaintiff remained out injured on duty. She never took maternity or FMLA leave. Id. The plaintiff was cleared and her first day back to work was December 15, 2007. SOF, ¶ 51.

The plaintiff filed a complaint with the Plymouth Superior Court in February 2008, claiming discrimination in violation of Mass. Gen. Laws c. 151B, § 4(4A) as well as a disability discrimination claim pursuant to Mass. Gen. Laws c. 51B, § 4(16). The plaintiff also alleged a conspiracy to deprive her of her rights under the Fourth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. §

1985(3) and a violation of Mass. Gen. Laws c. 12, § 11H and I.  Complaint, Exhibit A.  The case was removed to this Court.  SOF, ¶ 53.

## II.  Argument

### A. Summary Judgment Standard

Summary judgment is appropriate here because "the pleadings, depositions, answers to interrogatories, and admissions on file" show that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  See Hinchey v. Nynex Corp., 144 F.3d 134, 140 (1st Cir. 1998).

On a motion for summary judgment, the evidence is viewed in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences.  Cox v. Hainey, 391 F.3d 25, 27 (1st Cir. 2004).  The nonmovant, however, bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). Those facts must have evidentiary value; as a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998).

Applying this standard of review, summary judgment should enter in favor of the defendants on all of the plaintiff's claims.

**B.   Summary Judgment Should Enter in Favor of the Defendants on All Counts of the Plaintiff's Complaint.**

**1.   The Plaintiff's Claim of Discrimination in Count I**

In Count I, the plaintiff alleges that the actions of defendant created a hostile work environment and constitute discrimination "by coercing, intimidating,

8

threatening, or interfering with the exercise or enjoyment of her rights in violation of c. 151B, § 4(4A)." Section 4(4A) provides that it shall be unlawful for "any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter."

The plaintiff made no claim in her MCAD complaint pertaining to § 4(4A) or any coercion, intimidation or interference with the exercise of her rights. Rather, the plaintiff's MCAD complaint appears to have alleged a claim for discrimination based on her sex in violation of G.L. c. 151B, § 4(1).

In this action, the plaintiff describes her claim of discrimination as being that she was "subjected to verbal and emotional discrimination by the defendants in their treatment of her as the first female police officer employed by the town to become pregnant." Plaintiff's Answers to Interrogatories, No. 2, Exhibit M. She maintains she was "subject to repeated harassment by telephone calls, e-mail, demands for meetings, comments about her pregnancy and attempts to force her onto unpaid 'family leave'" and that she was subject to a hostile work environment. Id.

It is unclear whether the plaintiff is pursuing a § 4(1) claim here. Her complaint makes no mention of that section, referencing only § 4(4A) in this count. A claim under § 4(1) in any event would fail because, in order to make out a *prima facie* case of gender discrimination, the plaintiff must prove that: (1) she is a member of a protected class; (2) met her employer's legitimate job expectations; and (3) suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. Lavalley v. Quebecor World Book Services LLC., 315 F.

Supp. 2d 136, 144 (D. Mass. 2004); Lipschitz v. Raytheon Company, 434 Mass. 493, 751 N.E.2d 360 (2001). The plaintiff falters at a minimum, on the third prong.

For an adverse employment action, a plaintiff must show her employer's conduct was substantial and materially disadvantaged her in the terms, conditions, or privileges of her employment. MacCormack v. Boston Edison Co., 423 Mass. 652, 662, 672 N.E.2d 1 (1996). This inquiry is an "objective" one in which allegations "amount[ing] to no more than subjective feelings of disappointment and disillusionment" are insufficient to support a claim without "objective evidence that [a plaintiff] had been disadvantaged in respect to salary, grade, or other objective terms of employment." MacCormack, 423 Mass. at 663; see Bain v. City of Springfield, 424 Mass. 758, 766, 678 N.E.2d 155 (1997) (characterizing allegations that the mayor acted "coldly" toward plaintiff and that her superior was "second-guessing" her excessively were "the kind of subjective and intangible impressions that must not be considered in making out a [Chapter 151B] case"). See also Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996); Lavalley v. Quebecor World Book Services LLC., 315 F. Supp. 2d 136, 147 (D. Mass. 2004)

There is no evidence of any adverse employment action here. Indeed, the plaintiff has acknowledged that there was no action that prompted her to file any grievance with the union. The plaintiff continued to fulfill all of her regular duties from the time she informed the Chief of her pregnancy until she went out on injured on duty leave on April 14, 2007 following the car accident. She remained out on injured on duty until after the August 2007 birth of her child, returning to work in her regular position in December 2007. In light of these circumstances, it is clear that the plaintiffs cannot prove she experienced an adverse employment action.

The plaintiff's claim of discrimination by hostile work environment fares no

10

better. To establish a claim for a hostile work environment, the plaintiff must show (1) that she is a member of a protected class; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment; (5) that objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001). See also Cuddyer v. Stop & Shop, 434 Mass. 521, 532, 750 N.E.2d 928 (2001) ("A hostile work environment is one that is 'pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization....'"); Muzzy v. Cahillane Motors, Inc., 434 Mass. 409, 411, 749 N.E.2d 691 (2001) (to prove a hostile work environment claim, plaintiff must demonstrate he worked in a sexually hostile environment that unreasonably interfered with work performance and that the conduct alleged was sufficiently severe and pervasive to interfere with a reasonable person's work performance). The plaintiff has not shown that she was subjected to conduct that was extreme, humiliating, and that unreasonably interfered with her ability to work. Thompson v. Coca Cola Co., 522 F.3d 168, 179-180 (1st Cir. 2008) ("The environment must be sufficiently hostile or abusive in light of all of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'").

Nothing that the plaintiff has alleged fits this bill. Certainly, there is a

11

complete absence of allegation or evidence of an environment that "interfered with a reasonable person's work performance" or her actual work performance or ability to work. Since the time she informed the Chief in January of 2007 that she was pregnant until the time of her car accident in April of 2007, the plaintiff performed her regular duties. By virtue of car accident, the plaintiff was out injured on duty from April 2007 until December 2007. In December 2007, the plaintiff returned to her regular duties.

Further, there is no evidence that any defendant subjected her to a hostile work environment "by coercing, intimidating, threatening, or interfering with the exercise of [her] rights" in violation of M.G.L. c. 151, § 4(4A).

Summary judgment is an appropriate vehicle for "polic [ing] the baseline for hostile environment claims." Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006). It is appropriate here that summary judgment enter in favor of the defendants on this claim.

**2. The Plaintiff's Claims of Handicap Discrimination in Counts Two and Three.**

In Count Two, the Plaintiff contends that the defendants individually and collectively discriminated against her on basis of perceived disability in violation of G.L. c. 151B, § 4(16). In Count Three, the Plaintiff alleges that the defendants "repeatedly refused to make any reasonable accommodations for her pregnancy, " in violation of § 4(16).

**a. The Claims Against Hayes and Barron Under § 4(16) Must Be Dismissed because § 4(16) Does Not Apply to Them**

Section 4(16) states, in relevant part, that it is an unlawful practice:

> . . . [f]or any *employer*, personally or through an agent, to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of

> his handicap . . . .

M.G.L. c. 151B, § 4(16) (emphasis added).

Supervisory personnel are not individually liable under chapter 151B's general anti-discrimination prohibitions referring to "employers." See 5 Mass. Prac., Employment Law § 8.7, citing Ruffino v. State Street Bank & Trust Co., 908 F. Supp. 1019, 1048 (D. Mass. 1995). Chapter 151B permits the naming of individual defendants only under certain provisions. The provision invoked here, § 4(16), is not one that permits individual liability. Defendants Hayes and Barron are entitled to summary judgment on this claim.

### b. Plaintiff Never Claimed A Perceived Disability Before MCAD And Cannot Now Pursue Such a Claim in Count II

In Count II, the plaintiff claims the defendants discriminated against her on the basis of a perceived disability. The plaintiff never set forth such a claim in her MCAD complaint. A failure to set forth a discrimination claim at the agency level generally warrants dismissal. Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 531, 750 N.E.2d 928 (2001).

### c. The Plaintiff Cannot Satisfy the Elements of a Disability Discrimination Claim.

Claims of handicap discrimination, including a perception of ("regarded as") impairment, proceed under the well-settled three-stage order of proof. See City of New Bedford v. Massachusetts Comm'n Against Discrimination, 440 Mass. 450, 461-62, 799 N.E.2d 578 (2003); Labonte v. Hutchins & Wheeler, 424 Mass. 813, 821, 678 N.E.2d 853 (1997). To satisfy her initial burden of establishing a *prima facie* case of unlawful employment discrimination on the basis of handicap, id., the plaintiff was required to present credible evidence that she was (1) "handicapped" within the meaning of the statute; (2) "capable of performing the essential functions" of the job

either (a) without accommodation, or (b) with a reasonable accommodation provided by the employer, subject to the qualification that the accommodation not pose an undue hardship upon the employer; and (3) the handicap was the cause of the allegedly unlawful discriminatory action, i.e. adverse action by her employer. Cargill v. Harvard Univ., 60 Mass.App.Ct. 585, 586, 804 N.E.2d 877 (2004).

The plaintiff is therefore required to make a threshold showing that she was "handicapped" within the meaning of G.L. c. 151B. The plaintiff cannot meet this initial, and essential, burden. See City of New Bedford v. Massachusetts Comm'n Against Discrimination, 440 Mass. at 461-62. Pregnancy alone is not a handicap. McDonnell v. Certified Engineering & Testing Co., Inc., 899 F.Supp. 739, 753 (D.Mass. 1995) ("while in some cases pregnancy may render a person disabled, this disability must be demonstrated; pregnancy is not, *per se,* a disability"). Rather, under G.L. c. 151B, a plaintiff needs more than a normal pregnancy to succeed on a handicap discrimination claim. See McDonnell v. Certified Eng'g & Testing Co., 899 F. Supp. at 753. For example, pregnancy-related complications can constitute a handicap, but there were none involved in this case. The plaintiff's disability discrimination claims in Counts II and III fail for this reason.

### d. Plaintiff's Claim of Perceived Disability In Count II Fails On Other Bases

The plaintiff's claim in Count II that the defendants perceived her as disabled or handicapped in violation of G.L. c. 151B, § 4(16) fails on other grounds as well. First, there is no evidence that the defendants regarded her as being handicapped. In any event, even such a showing is insufficient for purposes of § 4(16). The plaintiff must show that the employer regarded them as substantially limited as to a major life activity.

In City of New Bedford v. MCAD, 440 Mass. 450, 455 (2003), the plaintiff, a New Bedford police officer and member of the SWAT unit, alleged that the city had discriminated against him based on a "perceived psychological handicap." After shooting and killing an armed suspect in the line of duty, the plaintiff was placed on "injured on duty" status and remained out of work for one year. Id. at 452. Upon his return to active duty, the chief of police refused to allow him to return to the SWAT unit because of his behavior and attitude. However, the plaintiff continued to work as a regular police officer.

The plaintiff filed a complaint with the MCAD alleging that the city removed him from the SWAT unit because it "perceived him to be handicapped" and regarded him as having emotional problems after the shooting. After an arbitrator decided that the city had perceived the officer as disabled in the major life activity of "working," the MCAD affirmed the decision in favor of the officer. On appeal, however, the Supreme Judicial Court deemed the MCAD's decision "palpably wrong." While assuming that the officer's alleged emotional problems could constitute impairment, the court held that an employee can be regarded as being substantially limited in the major life activity of working only if his or her employer perceives him or her as being precluded from performing a class or broad range of jobs. Id. at 466. The officer, however, had remained on the job as a full-time, active police officer.

Here, too, at all times relevant, the plaintiff remained a full-time active police officer until the date she went out injured on duty. The plaintiff thus cannot establish that the employer regarded her as being substantially limited in the major life activity of working. Moreover, it was the plaintiff who had broached the subject of restricting or altering her job duties. She did so when she initially announced her

15

pregnancy and again later when, just prior to her accident, she requested to stop working in the cruiser. As such, there was no issue of a "perceived" disability. Rather, the plaintiff did not present herself as ready and able to perform all the duties of her position, which duties included working in the cruiser.

### e. Plaintiff's Claim in Count III that the Defendants Failed to Make Reasonable Accommodation for her Pregnancy Fails on Other Bases

In Count III, the plaintiff alleges that she was "capable of performing essential functions of her position with a reasonable accommodation for the later part of her pregnancy" and that the defendants "refused to make any reasonable accommodation for [her] pregnancy and only provided her with the option of taking immediate unpaid leave…." However, it is only once a pregnancy-related medical condition becomes a covered disability, that an employer is obligated to provide a reasonable accommodation, as is provided to other disabled employees. That is, the issue of reasonable accommodation "is only considered when a handicapped person is not able to perform the essential functions of the job." 45 Massachusetts Practice, Employment Law § 8.22. A key point here is that, by the time of the "later part of her pregnancy," the plaintiff was out injured on duty. The plaintiff remained out until some four months after the birth of her son. As such, whether the plaintiff was "capable of performing the essential functions of the position involved with reasonable accommodation" in the later part of her pregnancy never came into play.[5] The plaintiff's allegation that the defendants "refused to make any reasonable accommodation" for her pregnancy suffers the same infirmity and further is unsupported by the evidence.

---

[5] In any event, granting an employee an unpaid leave has been recognized as a reasonable accommodation under c. 151B and the ADA and FMLA. 45 Massachusetts Practice, Employment Law § 8.22.

16

First, as a general matter, the law requires that pregnant women be treated equally with non-pregnant employees. Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination, 375 Mass. 160, 167-169, 375 N.E.2d 1192 (1978). The plaintiff here was seeking more favorable treatment. She wanted to stop working the cruiser and obtain either light duty or a reassignment as a house officer even though (1) all of the officers worked the cruiser; (2) there was no "light duty" under the union contract; and (3) there was no house officer position. But, the burden of showing that a reasonable accommodation was available is on the plaintiff. Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 648-49 (1st Cir. 2000); St. Laurent v. UPS, Inc., 416 F.Supp.2d 212, 222 (D. Mass. 2006). A proposed accommodation that does not exist in the town police department is not reasonable. See generally King v. Town of Wallkill, 302 F.Supp.2d 279, 292-291 (S.D. N.Y.2004). Massachusetts's law does not require that an employer provide a "reasonable accommodation" in the form of a reassignment to new or different position. Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 454, 772 N.E.2d 1054 (2002); see Lolos v. Solutia, Inc., 193 F.Supp.2d 364, 371-73 (D.Mass. 2002); St. Laurent, 416 F.Supp.2d at 223.

In any event, an employee's initial request for an accommodation triggers an obligation on the part of the employer to engage in an "interactive process" to determine whether an appropriate accommodation is available. Russell, 437 Mass. at 443, 772 N.E.2d 1054. The undisputed evidence shows that the defendants did engage in such a process.

Because there is no evidence that the plaintiff was limited in any major life activity, i.e. work, by pregnancy-related condition, or that any defendant so regarded her, or that any defendant failed to offer reasonable accommodation for any

17

disability that ever became an issue on the job, summary judgment should enter for the defendants as to Counts II and III.

### 3. The Plaintiff's Federal Conspiracy Claim in Count IV

Under 42 U.S.C. § 1985(3), the plaintiffs must show that the defendants (1) conspired (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) causing to be done an act in furtherance of the object of the conspiracy (4) resulting either in injury to another person or his or her property or in depriving him or her of having or exercising any right or privilege of a United States citizen. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996); LaManque v. Massachusetts Dept. of Employment & Training, 3 F.Supp.2d 83, 90-91 (D.Mass. 1998). For such a claim, a plaintiff must allege racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' action. Celestin v. City of New York, 581 F. Supp. 2d 420, 436 (E.D.N.Y. 2008); Butner v. Dep't of State Police, 60 Mass. App. Ct. 461, 468-69, 803 N.E.2d 722, 728 (Mass. App. Ct. 2004). The plaintiff makes no such allegation or showing.

Moreover, a plaintiff must allege that an independent federal right has been infringed. Section 1985 is a statute that provides a remedy, but it grants no substantive stand-alone rights. The source of the right or laws violated must be found elsewhere. See Federer v. Gephardt, 363 F.3d 754, 758 (8th Cir. 2004). As there is no evidence in this case to support the plaintiff's underlying claim of

discrimination, *a fortiori* there is no evidence to support a claim that Hayes and Barron were part of an orchestrated campaign to discriminate against her.[6]

### 4. The Plaintiff's MCRA Claim in Count V

In Count V, the plaintiff alleges that Hayes and Barron conspired to deprive plaintiff of rights under 4th and 14th Amendments in violation of Massachusetts Civil Rights Act, M.G.L. c. 12, § 11H, I. But, where a statute provides a specific remedy, an action under a more general provision of law or the Massachusetts Declaration of Rights will not lie. Here plaintiff's specific remedy is provided by Chapter 151B. See Charland v. Muzi Motors, 417 Mass. 580, 582, 631 N.E.2d 555 (1994); Agin v. Federal White Cement, Inc., 417 Mass. 669, 672, 632 N.E.2d 1197 (1994). The State Civil Rights Act is "a more general provision of law" and plaintiff is thus left to the exclusive remedies of Chapter 151B. See Mouradian v. General Electric Co., 23 Mass.App.Ct. 538, 503 N.E.2d 1318 (1987). See also Daley v. Wellpoint Health Networks, Inc., 146 F. Supp. 2d 92, 104-05 (D. Mass. 2001). Consequently, Count V must be dismissed.

### Conclusion

For the reasons set forth above, summary judgment should enter in favor of the defendants on all counts of the plaintiff's complaint, along with such other relief as this Court deems appropriate.

---

[6] Further, the plaintiff's claim appears to rest on her claim that the defendants "tried to force her onto unpaid Family Medical Leave status" and the evidence does not support such claim. Notably, the plaintiff acknowledges that, in terms of Wanda Barron, her only contention is that Barron told her the FMLA leave was 16 weeks when it was 12 weeks, and that Barron said that plaintiff might have to get examined by a Town doctor. Malloch Depo, pp. 192 – 193, Exhibit C. Barron made the latter comment in response to the plaintiff's assertion that her doctor would write any kind of note necessary to establish a problem with her pregnancy in terms of her work. Neither of these assertions rises to any claim as against Barron and summary judgment should enter in her favor on all claims on this additional basis.

19

Respectfully submitted,

Defendants, Town of Hanover, Paul Hayes and Wanda Barron
By their attorneys,


/s/ Thomas Donohue
Leonard Kesten, BBO# 542042
Thomas Donohue, BBO# 643483
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza, 12th Floor
Boston, MA  02116
(617) 880-7100
lkesten@bhpklaw.com
tdonohue@bhpklaw.com


CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent to those participants indicated as non-registered participants on October 4, 2010.

October 4, 2010    /s/ Thomas Donohue
Date                        Thomas Donohue