UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 08-10412 LTS

_____
                                              )
KRISTIN MALLOCH,                              )
        Plaintiff                             )
                                              )
v.                                            )
                                              )
TOWN OF HANOVER, PAUL HAYES, CHIEF OF         )
POLICE, and WANDA BARRON, PERSONNEL           )
ADMINISTRATOR,                                )
Defendants                                    )
_____)

---

MEMORANDUM IN SUPPORT OF PLAINTIFF KRISTIN MALLOCH'S
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

## I.  <u>INTRODUCTION</u>

This is an action alleging gender discrimination by Defendants who created a hostile work environment by coercing, intimidating, threatening, or interfering with the exercise or enjoyment of Plaintiff, Kristin Malloch's, rights in violation of the provisions of M.G.L. c. 151, §4(4A); discrimination on the basis of a perceived disability in violation of M.G.L. c. 151B §4(16); violation of 42 U.S.C. §1985(3) and violation of Massachusetts Civil Rights Act, M.G.L. c. 12, §§11H and I.

## II.  <u>STATEMENT OF FACTS</u>

At all times relevant, the plaintiff was the first and only full-time female police officer employed by the Hanover Police Department. Complaint, ¶ 7; Statement of Material Facts (hereinafter "SOF"), ¶ 4.  At all times relevant, Paul Hayes was the Chief

of Police and Wanda Barron was the Personnel Administrator for the Town of Hanover. SOF ¶¶ 2; 3. After disclosing her pregnancy to Chief Hayes, the plaintiff was subjected to a pattern of conduct in which she was discriminated against and that singled her out from her fellow police officers. This discrimination and harassment was based on, among other things, perceived disability and gender. See, *Complaint*, generally; SOF, ¶ 21. Chief Hayes refused to re-assign or make an accommodation for the plaintiff and interfered with any effort she made to effectuate an accommodation or re-assignment. SOF ¶ 40. On numerous occasions, Hayes made demeaning and offensive comments about the plaintiff to her peers and co-workers, including but not limited to, his belief that she would be unable to do her job because she would be "unable to wear a gun belt" as her pregnancy progressed, SOF, ¶¶ 66; 86; would be incapable of handling domestic violence cases due to her pregnancy, SOF, 61¶; and that the plaintiff showed poor judgment by not planning her pregnancy better. SOF, ¶ 86. Furthermore, when asked by the plaintiff to make an accommodation or re-assignment, Hayes told the plaintiff he might be able to find her a position in a mailroom or as a secretary in the school department. SOF, ¶¶ 61-63.

Sometime in late December 2006 to January 2007, the plaintiff learned she was pregnant with her first child. SOF, ¶ 6. Because the police department did not have a stated pregnancy policy, the plaintiff wanted to alert Chief Hayes to her situation as early as possible, so options and accommodations could be explored. SOF, ¶ 9. At that time, Chief Hayes was the only person, other than the plaintiff's immediate family (husband, parents, brother and sister-in-law) who knew she was pregnant. SOF ¶ 7. The plaintiff asked Chief Hayes to keep their conversation confidential because it was still very early

in her pregnancy. SOF ¶ 8. Prior to disclosing her pregnancy to Chief Hayes, Malloch loved her job, had no problems at work and believed Hayes to be a family friend. Malloch Depo, pp. 26; 31.  In 2006, Hayes attended the plaintiff's wedding. Malloch Depo, p. 26.

During their initial conversation, Malloch told Hayes that her plan was to work until she had her baby, but, for the last 30-45 days of her pregnancy, wanted to be re-assigned to a position that did not involve being in a cruiser.  SOF ¶¶ 12-13.  Hayes told the plaintiff that the Town did not have a light-duty policy for injured officers, to which the plaintiff reminded Hayes that she was not injured, but pregnant and said that she was not looking for a light duty position, merely an accommodation.  SOF ¶¶ 13-15.  Despite his initial assurances to "work something out" and keep their conversation confidential, Chief Hayes told Malloch that he would have to speak with the Town about what to do about her pregnancy. SOF ¶ 15; Malloch Depo, p. 32-33.

Approximately one week after their initial meeting, the plaintiff was told to appear for a meeting with Chief Hayes, Lt. Sweeney and Wanda Barron to discuss her pregnancy.  SOF ¶ 17.  When the plaintiff asked Hayes about the purpose of the meeting, she was told it was just informational and not policy setting and did not need a union representative.  SOF, ¶ 18; Malloch Depo, p. 128.  When the plaintiff arrived for the meeting, only the defendants Hayes and Barron were present. SOF, ¶ 19.  During that initial meeting, the defendants attempted to coerce Malloch into filing immediately for leave under the Family Medical Leave Act ("FMLA"). SOF, ¶ 25.  Malloch told the defendants that she did not wish to go out on FMLA and was fit for duty. SOF, ¶ 26, Complaint, ¶ 18.  Barron told Malloch that if that was the case, she was considering

having the plaintiff examined by a doctor (OB/GYN) designated by the Town.  When the plaintiff inquired as to why she would be required to go to a doctor other than her own, Barron told her that if an officer is claiming injury, the Town had a right to determine whether the officer was fit for duty.  SOF, ¶¶ 21-22.   The plaintiff responded to this by stating that there was a considerable difference between getting ones arm x-rayed and having a gynecological exam.   SOF ¶ 23. The meeting became increasingly confrontational toward the plaintiff. SOF ¶ 28.  Barron went to far as to suggest that she could force the plaintiff to have a gynecological exam if she wanted. Id.   At the conclusion of the meeting, the plaintiff was given FMLA forms and told to have them filled out by her doctor.  When she left the meeting, Barron and Hayes remained behind. SOF, ¶ 29, Malloch Depo, p. 51.

For the next three weeks following the initial meeting, Hayes refused to speak to or acknowledge the plaintiff, even when she would said "hello" to him in the hall.  SOF, ¶ 31.  Because of some of her extra duties, the plaintiff saw Hayes several times a day. Id.   It was clear to the plaintiff was behaving in this manner because of the issues surrounding her pregnancy.  SOF, ¶ 35.  Chief Hayes' treatment of the plaintiff became so uncomfortable for her, that she spoke with union president and fellow police officer Dan Salvucci and discussed the problems she was having with Hayes.  SOF, ¶ 36. Shortly after speaking with Salvucci, the plaintiff was, again, called into Hayes' office. SOF, ¶ 37.  During the meeting, the plaintiff told Hayes that she was not trying to cause problems, she just wanted a family like anyone else and wanted to be able to do her job. SOF, ¶ 39.   Hayes told the plaintiff that he was not trying to give her a hard time, he just had to figure out what to do with her. SOF, ¶ 38.

Both during and after this meeting, Hayes continued to coerce the plaintiff to file for FMLA leave.  In conversations and e-mails he demanded that she fill out the forms provided to her, insisting that the Town required that she complete the forms.  SOF, ¶¶ 41-42.  The plaintiff's work environment became so hostile and uncomfortable that the plaintiff asked another officer, and Hayes' friend, to intervene in hopes that his harassment of her might end.  SOF, ¶¶44-45.  After speaking with Hayes, the officer told the plaintiff that Hayes' response to him was "it's not my problem." SOF ¶ 46.

On several occasions, the plaintiff discussed several possible short-term reassignments or accommodations with Hayes. SOF, ¶¶ 55-60; 64-65.  Despite the fact that the ultimate decision to deny her proposals lay with Hayes, each time the plaintiff went to Hayes with a suggestion, he would refuse, blaming the union for his inability to make an accommodation. Id.  As a result, Malloch again spoke with Dan Salvucci about what Hayes had said and that she was upset with the fact that Hayes had made a number of re-assignments and accommodations for other officers in the past and did not understand why he was unwilling to do the same for her. SOF, ¶¶ 40; 47.

After her conversation with Salvucci, Malloch was ordered to attend another meeting with Chief Hayes.  SOF ¶ 48.  Hayes told Malloch that he had spoken with Salvucci.  SOF ¶ 50.  The meeting was very confrontational and Hayes was very angry at Malloch for talking to Salvucci.  SOF ¶ 51.  The plaintiff again went through a list of things she could do outside the cruiser and gave Hayes examples of other re-assignments or accommodations made for other officers who had issues other than pregnancy. SOF ¶¶55.  During this meeting, at which another officer was present, Hayes asked the

plaintiff what he was "going to do with [the plaintiff] when [her] gun belt d[id] not fit." SOF ¶ 66.

On April 14, 2007, the plaintiff was on duty in a police cruiser. She was struck by another car and received injuries while on duty. SOF, ¶ 69. Despite being on out-injured status, Hayes continued to treat the plaintiff differently than he had any of her male co-workers and continued to harass her. SOF, ¶¶ 74-75; 79. Almost immediately after the accident, the plaintiff began treating with the Town's medical provider at Quincy Medical Center. SOF ¶¶ 69-70. The determination of when the plaintiff could return to work was up to the staff at Quincy Medical Center. SOF, ¶ 73. Despite this fact, Hayes continually the staff at Quincy Medical Center, who found him intimidating, in an effort to determine the plaintiff's status and interfere with the course and length of her treatment. SOF, ¶¶ 75-76. During the time Hayes was chief of police, several other officers were injured while on duty. Hayes did not interfere with or question their course of treatment. SOF, ¶ 79. In addition to calling Quincy Medical about the plaintiff, on numerous occasions, either Hayes or someone calling on his behalf would call the plaintiff and demand to know when she was returning to duty. SOF ¶ 83.

As a result of the defendants' conduct, the plaintiff was under a great deal of stress, had difficulty maintaining weight, and high blood pressure. SOF ¶ 88.

### III. STANDARD OF REVIEW

As the party moving for summary judgment, the defendants assume "the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue" even if they "would have no burden on an issue if the case were to go to trial." *Pederson v. Time, Inc.*, 404 Mass. 14, 17 (1989). A grant of summary judgment is

reviewed while "viewing the evidence in the light most favorable to the nonmoving party" and ensuring that "all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc. v. Liberty Mut. Ins. Co.*, 410 Mass. 177, 120 (1991). See Mass.R.Civ.P. 56(c). Summary judgment is inappropriate when there are outstanding issues of material fact. See *Breuing v. Callahan,* 50 Mass.App.Ct. 359, 363 (2000).

It is well established that "all evidentiary inferences must be resolved in favor of the plaintiff." *Nunez v. Carrabba's Italian Grill, Inc.*, 448 Mass. 170, 2007. *See Simplex Techs., Inc. v. Liberty Mut. Ins. Co.,* 429 Mass. 196, 197 (1999). The defendants have the burden of showing that "there is an absence of evidence" to support plaintiff's case. *FDIC v. Municipality of Ponce,* 904 F2d 740, 742 (1st Cir. 1990). If, and only if, the defendants do so, then the burden shifts to plaintiff to establish a genuine factual dispute. Id. In deciding whether a factual dispute is genuine, the Court must determine whether "the evidence is such that a reasonable jury could return a verdict for the non-moving part." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986*)*

Wherefore, Summary Judgment should be denied because genuine issues of material facts exist and the defendants are not entitled to summary judgment as a matter of law.

## IV.  ARGUMENT

### A. Motion for Summary Judgment should be denied because Plaintiff Established a Prima Facie Case of Pregnancy Discrimination.

Section 4(1) of Massachusetts General Laws ch. 151B makes it unlawful to discriminate against an employee because of her gender. Pregnancy is a condition unique to women and the ability to become pregnant is a primary characteristic of the female

sex, any classification which relies on pregnancy as the determinative criterion is a distinction based on "sex" within meaning of state antidiscrimination law. M.G.L. c. 151B §4. Because pregnancy and childbirth are sex-linked characteristics, any employment action or decision by Town of Hanover ("Town") which is based on Ms. Malloch's pregnancy or her intention to use maternity leave constitutes unlawful sex discrimination. *See, Massachusetts Elec. Co. v. MCAD,* 375 Mass. 160, 169 (1978); *Osmani v. State St. Bank & Trust,* 25 M.D.L.R. 151 (2003). "An employer may not, therefore, use a woman's pregnancy, childbirth or potential or actual use of [Massachusetts Maternity Leave Act] leave as a reason for an adverse job action, such as ... discharging her, laying her off, failing to reinstate her or restricting her duties." *Massachusetts Commission Against Discrimination Guidelines on the Massachusetts Maternity Leave Act, Section VI.*

A plaintiff may establish a rebuttable presumption of unlawful gender discrimination under Massachusetts General Laws ch.151B by showing that: (1) was member of protected class, (2) met her employer's legitimate job expectations, and (3) suffered adverse employment action under circumstances giving rise to inference of unlawful discrimination. A plaintiffs burden to establish a prima facie case of discrimination is not onerous. *See, Sullivan v. Liberty Mut. Ins. Co.,* 444 Mass. 34, 41, 45 (2005). "It is meant to be a 'small showing' that is 'easily made.' " *Id.* at 45 (citations omitted).

Taking these elements one by one, it is undisputed that Ms. Malloch is a member of the protected group or class, which for the purpose of establishing a prima facie case of pregnancy discrimination, is pregnant women, not all women, *Miles v. Dell, Inc.* 429

F.3d 480 (4th Cir. 2005), citing *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 154 (1st Cir.1990); *Gleklen v. Democratic Congressional Campaign Comm., Inc.*, 199 F.3d 1365, 1368 (D.C.Cir.2000).

Second, there is no doubt that Ms. Malloch performed her job at an acceptable level and 'met her employer's legitimate job expectations' throughout her career. Chief Hayes praised Ms. Malloch repeatedly, as we have seen, and she was well respected throughout the Department. The defendants do not, in any event, dispute Ms. Malloch' work ethic and performance.

For purposes of Mass. Gen. Laws c. 151B, the third element can be more accurately stated as "plaintiff suffered an adverse employment action within the meaning of section 4(1)," including not only discharge but discrimination "in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification." See gen. *Hernandez-Torres v. Interncontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998) (adverse employment actions include "disadvantageous transfers or assignments").

After informing Chief Hayes about her pregnancy, she met with defendants Hayes and Barron who repeatedly attempted to force her file for Family Medical Leave ("FMLA"). At said meeting, Malloch's request for Union representation was denied by Chief Hayes who said that the meeting was merely "informational." Malloch stated that she could not afford to go out on FMLA for six to eight months and it was unfair to force her to do so.  Malloch's plan was to work until the day she had her baby.  Malloch Depo, p. 35. Barron stated that the "point of this is not to make sure you get paid, but to make sure you have a job when this is all over."  At the same meeting Defendant Barron stated

she could force Malloch to see the town doctor to determine if she was fit for duty. Subsequent to the aforementioned meeting, the "intimidation" by Chief Hayes continued by refusing to acknowledge or speak with Ms. Malloch for the following three weeks. Defendants repeatedly refused to make any reasonable accommodation for her pregnancy and only provided her with the option of taking an immediate unpaid leave as recourse for "dealing" with her pregnancy.

A party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of fact on *every* relevant issue raised by the pleadings, *Mack v. Cape Elizabeth School Bd.*, 553 F.2d 720, n. 3 (1st Cir. 1977) (remand from summary judgment for defendant in pregnancy discrimination case).  Because the defendants have failed to do so, their motion must be denied.

**B. Motion for Summary Judgment should be denied because Plaintiff Established a Prima Facie Case of Hostile Work Environment.**

Ms. Malloch has introduced substantial evidence to show that the actions of defendant created a hostile work environment and constitute discrimination by coercing, intimidating, threatening, or interfering with the exercise or enjoyment of her rights in violation of M.G.L. c. 151, §4(4A).

In order to prevail on a hostile work environment theory, the plaintiff must allege conduct that is severe and pervasive enough to create an environment that would reasonably be perceived, and is perceived, as hostile or abusive. *Harris v. Forklift Systems. Inc.,* 510 U.S. 17, 22, (1993). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris,* 510 U.S. at 23. Even a single incident can be enough to create a hostile work environment. *Cruz v. Coach,* 202 F.3d at 560, 571. "The critical inquiry 'is whether members of one sex are

exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.' " *Id.* citing *Harris,* 510 U.S. at 25 (Ginsburg, J., concurring).

Plaintiff's allegations should be evaluated in terms of whether a reasonable woman, who is subjected to the same type of harassment, would perceive the working conditions as so "severe or pervasive" as to create an altered work environment. The standard for "severe or pervasive" is met when the victim subjectively and objectively perceives the environment to be abusive. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 69 (1986); *Harris,* 510 U.S. at 21-22. In determining whether a hostile work environment existed, a jury may consider, among other factors, whether (1) the conduct was verbal, physical, or both; (2) the conduct occurred one time or repeatedly; (3) the conduct was plainly offensive; (4) the alleged harasser was a co-worker or supervisor; (5) others joined in the harassment; (6) the alleged harassment was directed at more than one person; (7) whether the conduct was unwelcome; (8) the effect on the plaintiff's psychological well-being; (9) the context in which the alleged harassment occurred; and, (10) whether it unreasonably interfered with the plaintiff's work performance. *Employment Litigation: Model Jury Instructions,* Section of Litigation, American Bar Association § 1.04[2] [b] (1994ed.).

The defendants' conduct, from the time that the plaintiff informed Hayes that she was pregnant through present, altered Officer Malloch's work environment to the level of "severe or pervasive" such that it constituted a hostile work environment. One need only look at not only the defendants' conduct, but statements made by Chief Hayes either to Officer Malloch or about Officer Malloch, to understand how hostile the plaintiff's work

environment became.  Accordingly, Plaintiff has properly pled a cause of action for a hostile work environment and dismissal would be inappropriate.

> 1) <u>The Reasons Advanced By the Defendant Constitute Mere Pretext For Unlawful Discrimination</u>

The Court stated in *McDonnell* that "[i]f a defendant articulates non-discriminatory grounds, at the third and final stage, plaintiff must produce sufficient evidence, direct or indirect, to show that the reasons advanced by the employer constitute mere pretext for unlawful discrimination. The standard for satisfying this rebuttal case varies somewhat under federal and state law. The fact finder's disbelief of the reasons put forward by defendant, particularly if disbelief is accompanied by a suspicion of mendacity, may, together with the elements of the prima facie case, suffice to show intentional discrimination." *McDonnell v. Certified Eng'g & Testing Co.*, 899 F. Supp. 739 (D. Mass. 1995)

Pretext cases are examined under a burden-shifting framework developed by the Supreme Court, known as the *McDonnell Douglas* test. *McDonnell Douglass Corp. v. Green*, 411 U.S.792 (1973). Courts should apply this method by "presum[ing] that, once the plaintiff has demonstrated the [elements of the prima facie case], unlawful discrimination was the most likely reason for the adverse personnel action." *Id*. The burden of production shifts then to the employer to provide a legitimate non-discriminatory reason for the adverse employment decision.

There is ample evidence present from which a jury could reasonably infer that the Defendant discriminated against Plaintiff based on her pregnancy. There is a genuine issue of fact on this issue.  To the extent that the Plaintiff is required to prove she was treated differently than comparable employees, the Court has not mandated a certain

measure of comparative evidence. In *Columbus,* the evidence showed that the plaintiff was treated differently than only one other employee. *Columbus v. Biggio,* 76 F. Supp. 2d 43 (D. Mass. 1999). Here, the question is whether Plaintiff was treated differently from other employees under Defendants' charge. The plaintiff has demonstrated a genuine issue of fact on this issue. The Court in *Bell v. Potter,* 234 F. Supp. 2d 91; 2002 U.S. Dist. LEXIS 24161, plainly stated that with diverging versions regarding retaliation and assessing the credibility of the defendant's statements as to whether its rationale is pretext is a jury issue.

> "In the analogous context of summary judgment under <u>Rule 56</u>, we have stated that the court must review the record 'taken as a whole.' And the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.' It therefore follows that, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. 'Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."

*Bell*, at 91.

Accordingly, because the plaintiff has clearly established genuine issues of material fact and summary judgment for the defendants must therefore be denied.

### C. The Plaintiff's Handicap Discrimination Claim is Supported By the Evidence and Establish Triable Issues That Must Survive Summary Judgment.

Whether or not the Plaintiff has met the definition of a qualified handicapped person is viewed under a three part analysis, i.e. (1) whether her condition, actual or perceived, constitutes a mental or physical impairment; (2) that the life activity curtailed

constitutes a major life activity; and (3) whether the impairment substantially limited the major life activity. *City of New Bedford v. MCAD,* 440 Mass. 450, 463 (2003). A "qualified handicapped person," [is]., a "handicapped person who would be capable of performing the essential functions of a particular job with reasonable accommodation to [his] handicap." G.L. c. 151B, 1(16).

All of the evidence establishes that the Plaintiff had a physical impairment which interfered with her major life activity of working. In fact, it is undeniable that the Defendants *perceived* the Plaintiff as being unable to perform a broad range of jobs and activities.

However, the plaintiff may also pursue a claim that the discrimination she suffered was the result of the defendants' perception of her as a disabled person. If the decision to treat the plaintiff differently than her male co-workers was made after Officer Malloch disclosed her pregnancy status, as she alleges, the question remains whether or not she was discriminated against because she was perceived as disabled. The plaintiff has satisfied the first element of the *prima facie* case by alleging that she was perceived as a disabled person. McDnnell, 899 F. Supp at 753.  As a result, summary judgment is inappropriate. *Id*.

### 1)  Chapter 151B Applies to All Defendants

Chapter 151B makes it an unlawful practice "[f]or an employer" to discharge an individual from employment because of the sex of such individual. G.L. c. 151B, §4. Any classification which relies on pregnancy as the determinative criterion is a distinction based on "sex" within the meaning of the statute. *Massachusetts Electric Co. v. Massachusetts Commission Against Discrimination,* 375 Mass. 160, 161 (1978).

Chapter 151B defines the statutory term "employer" as not encompassing a corporation with fewer than six employees. M.G.L. c. 151B, §1(5). Public employers are included regardless of the number of people employed. *Id.*

>   2) <u>Plaintiff May Pursue a Claim on the basis of a perceived disability in violation of M.G.L. c. 151B, §4(16) even if assuming, *arguendo*, a claim was never set forth in her MCAD complaint.</u>

Defendant alleges that the "a failure to set forth a claim at the agency level generally warrants dismissal." Defendant Motion for Summary Judgment pg. 13. The general rule, however, does not mean that the administrative complaint sets a rigid "blueprint" for the civil action. See *Powers v. Grinnell Corp.,* 915 F.2d 34, 38 (1st Cir.1990). Under what is often termed the "scope of the investigation" rule, "a claim that is not explicitly stated in the administrative complaint may be asserted in the subsequent Superior Court action so long as it is based on the acts of discrimination that the MCAD investigation could reasonably be expected to uncover." *Windross v. Village Automotive Group, Inc., supra* at 864-865, 887 N.E.2d 303. See *Powers v. Grinnell Corp., supra* at 39, quoting *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970) ("the critical question is whether the claims set forth in the civil complaint come within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination' ").

In order to survive summary judgment as to whether or not the employer perceived the employee to be handicapped, only slight evidence is required. *Dartt v. Browning-Ferris Industries. Inc.,* 427 Mass. 1, 17 (1998).

>   3) <u>The Defendant had a legal obligation to explore possible accommodation and discuss them with the Plaintiff, but breached that duty.</u>

"[I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one." *Russell v. Cooley Dickinson Hosp., Inc.,* 437 Mass. at 457, quoting from *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 165 (5th Cir.), cert. denied, 519 U.S. 1029 (1996). *Ocean Spray Cranberries, Inc. v. Massachusetts Commn,* Against Discrimination 441 Mass. at 644. *See,* MCAD Guidelines § II.C ("If a person with a handicap requests but cannot suggest an appropriate accommodation, the employer and the individual should work together to identify one").

### D. THERE IS SUFFICIENT EVIDENCE TO GO FORWARD ON PLAINTIFFS' CLAIM UNDER 42 U.S.C. §1985(3)

A person may seek relief under 42 U.S.C. 1985(3) for a deprivation of rights, secured by the Constitution or a federal statute, resulting from a conspiracy motivated by invidious discrimination. *Griffin v. Breckenridge,* 403 U.S. 88, 102-103, 91 S.Ct. 1790 (1971). It is well established that discrimination on the basis of gender violates the equal protection clause of the United States Constitution. *Davis v. Passman,* 442 U.S. 228, 234, 99 S.Ct. 2264 (1979); *Trautvetter v. Quick,* 916 F.2d 1140 (7th Cir. 1990); *Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881 (1st Cir. 1988). It is also well established that purposeful sex discrimination is invidious discrimination within the meaning of 42 U.S.C. §1985(3). *NOW v. Operation Rescue,* 914 F.2d 582 (4th cir. 1990); *NOW v. Terry,* 886 F.2d 1339 (2nd Cir. 1989); *Novotny v. Grt. Amer. Fed. S&L,* 584 F.2d 1235 (3rd Cir. 1978); *Stathos v. Bowden,* 514 F.Supp 1288 (Mass 1981).

For more than twenty years it has been the established law of the Commonwealth that any classification which relies on pregnancy as the determinative criterion is a distinction based on gender. *School Committee of Maiden,* 365 Mass. 197, 310 N.E.2d

330 (1994) (refusal to pay sick leave for disabilities related to pregnancy unconstitutional); *Massachusetts Electric Company v. MCAD,* 375 Mass. 160, 167, 375 N.E.2d 1192, 1198 (1978) (excluding pregnancy from a disability policy is sex discrimination); *School Committee of Brockton v. MCAD,* 377 Mass 392, 386 N.E.2d 1240 (1979) (refusal to allow teachers to use accrued sick leave for pregnancy related disabilities is sex discrimination); *School Committee of Braintree v. MCAD,* 377 Mass 424, 386 N.E.2d 1251 (1979); *White v. University of Massachusetts at Boston,* 410 Mass. 553, 574 N.E.2d 356, 358 (1998) (pregnancy is a protected class). The Court stated in *Mass Electric:*

> "pregnancy exclusions reflect and perpetuate the stereotype that women belong at home raising a family rather than at a job as permanent members of the work force." at Mass. 169.

In *Automobile Workers v. Johnson Controls,* 499 U.S. 187, 198 (1991) the Supreme Court held that a policy precluding women of child bearing age from jobs with an exposure to lead was a facially discriminatory policy. The only defense would be for the defendants to establish that the policy was a Bona Fide Occupational Qualification (BFOQ). A BFOQ is a qualification reasonably necessary to the normal operation of that particular business or enterprise. The court held that a BFOQ must be narrowly construed, particularly where it was alleged that gender created a safety hazard. It must relate to the essence or central mission of the business. "Our case law, therefore, makes clear that the safety exception is limited to instances in which sex or pregnancy actually interferes with the employee's ability to perform the job... Decisions about the welfare of future children must be left to the parents who conceive, bear, support, and raise them, rather than to the employers who hire those parents." *Id*. at 204, 206.

In discrimination cases it has been specifically stated that motive is a question of fact that cannot be resolved on summary judgment. *Wynn & Wynn v. MCAD,* 431 Mass. 655, 665 (2000). Taking the facts in the light most favorable to plaintiff, as must be done for purposes of summary judgment, there is ample evidence from which a jury could conclude that the Defendants had the intent to act based upon plaintiff's pregnancy, and thus, were motivated by unlawfully discriminatory animus.

The Plaintiff is entitled to all possible inferences for purposes of this motion. This evidence is certainly sufficient to survive a summary judgment  motion based upon an alleged lack of evidence of discriminatory intent.

### E. THERE IS SUFFICIENT EVIDENCE TO GO FORWARD ON PLAINTIFFS' CLAIM UNDER MCRA

To establish a claim under the MCRA, a plaintiff must prove that (1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by "threats, intimidation or coercion." *See,* M.G.L. C.12 § 11(I), (H); *Swanset Dev. Corp. v. City of Taunton*, 423 Mass. 390, 395 (1996); *Bally v. Northeastern Univ. 403 Mass. 713, 717 (1989).*

The coercion element has been defined as "the application to another of such force, *either physical or moral,* as to constrain him to do against his will something he would not otherwise have done." *Planned Parenthood League of Massachusetts, Inc. v. Blake*, 417 Mass. 467,474 (1994). The standard to be applied is whether a reasonable person would be threatened, intimidated, or coerced by the defendant's actions. *Id*. at 474-75.

This coercion need not take the form of a physical confrontation - a MCRA claim may be raised based on economic or moral coercion. *See, Broderick v. Roache*, 803 F.Supp. 480, 486-87 (D. Mass 1992) (listing cases and noting that actual or potential physical duress often serves as a proxy for threats, intimidation or coercion because it is easily identified, but it is not required under the MCRA); *Buster v. George W. Moore, Inc.*, 438 Mass. 635, 646-47 (2003) ("we have recognized that coercion may take various forms, and we have not limited its scope to actual or attempted physical force. For example, we have suggested that coercion may be found where one party deprives another of rights due under a contract, or makes it impossible, due to sexual harassment, for another to continue her employment") (internal citations omitted); *Swanset Dev. Corp. v. Taunton*, 423 Mass, at 396 n.l 1 (assuming without deciding the point that "coercion which does not involve physical force might violate the [a]ct" and defining coercion as "the use of physical *or moral* force to compel [another] to act or assent") (emphasis added).

Moreover, a pattern or scheme of harassment and retaliation, even non-physical, may constitute unlawful intimidation actionable under the MCRA. *See, e.g., Broderick*, 803 F.Supp. at 487 (denying summary judgment and finding material issue of fact whether the city, by denying the plaintiff a promotion to which he was entitled, refusing to grant him permission to practice law in his off-duty hours and subjecting him to unjustified disciplinary proceedings, attempted to threaten, coerce or intimidate the plaintiff); *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 594 (2001) (denying summary judgment and finding a material issue of fact whether the defendants engaged in a pattern of harassment and intimidation to suppress plaintiff's free speech rights by

arbitrarily enforcing rules against plaintiff, denying him benefits to which he was entitled, harassing him by telling him to "shut up" and attempting to suspend him).  In the instant case, the plaintiff has demonstrated a genuine issue of fact regarding the defendants' behavior, course of conduct, and treatment of her, that differed from the way in which male police officers were treated.  This pattern of treatment/harassment of the plaintiff continued, even after she was injured on duty.  As a result, the plaintiff has demonstrated a genuine issue regarding the pattern of conduct, orchestrated by the defendants to coerce, intimidate, harass or discriminate the plaintiff.

Finally, a plaintiff need not show that the defendant specifically intended to violate her civil rights - it is enough that such violation is the result of the defendants' actions. *See Redgrave v, Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 99 (1987); *see Monroe v. Pape*, 365U.S. 167 (1961) (§ 1983, on which the MCRA is based, does not have an intent requirement).  All that is required is that "the natural effect of the defendant's action" violates the plaintiff's civil rights. *Redgrave*, 399 Mass, at 99.

## V.   **CONCLUSION**

For the foregoing reasons, the plaintiff, Kristin Malloch, respectfully requests that

this Honorable Court deny the defendants' motion for summary judgment.


Respectfully submitted,
Kristin Malloch,
by her Attorneys,


/s/ Michael D. Brennan_____
Timothy M. Burke, BBO#: 065720
Michael D. Brennan, BBO#: 557401
Law Office of Timothy M. Burke
160 Gould Street, Suite 111
Needham, MA 02494
(781) 455-0707
attytmb@aol.com
mike@mdbrennanlaw.com


## **CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will
therefore be sent electronically to the registered participants as identified on the Notice of
Electronic Filing (NEF) and paper copies will be sent to those participants indicated as
non-registered participants on this 12th day of November 2010.


/s/ Michael D. Brennan_____
Michael D. Brennan, BBO#: 557401