UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                              | )  |                              |
|------------------------------|----|------------------------------|
| KRISTIN MALLOCH,             | )  |                              |
|                              | )  |                              |
|   Plaintiff,       | )  |                              |
|                              | )  |                              |
| v.                           | )  | Civil Action No. 08-10412-LTS |
|                              | )  |                              |
| TOWN OF HANOVER, et al.,     | )  |                              |
|                              | )  |                              |
|   Defendants.      | )  |                              |
|                              | )  |                              |

ORDER AND MEMORANDUM ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

February 7, 2011

SOROKIN, M.J.

  The Plaintiff, Kristin Malloch, has brought suit against the Defendants, the Town of Hanover and two of its employees (the Chief of Police, Paul Hayes, and the Town's Personnel Administrator, Wanda Barron). She brings claims pursuant to M.G.L. c. 151B and 42 U.S.C. ¶ 1983, alleging that the Defendants: created a hostile work environment, discriminated against her on the basis of a perceived disability (i.e., pregnancy), and refused to accommodate her pregnancy (all in violation of M.G.L. c. 151B); conspired to deprive her of her rights guaranteed to her under the Constitution of the United States, in violation of 42 U.S.C. § 1985(3); and conspired to deprive her of her rights in violation of the Massachusetts Civil Rights Act (MCRA), M.G.L. c. 12 § 111H and I. Docket # 1-2.

  The Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56,

1

asserting that there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law. Docket # 15. For the following reasons, their motion is ALLOWED.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Malloch has been employed as a police officer by the Town of Hanover since 2004, and is the first and only full-time female police officer hired by the Town. Docket # 20 at ¶¶ 4-5.[1] Hayes was at all relevant times the Town's Police Chief, and Barron is the Town's Personnel Administrator. Docket # 20 at ¶¶ 2-3.

In early January, 2007, Malloch told Hayes that she was pregnant. Id. at ¶ 6. Malloch told Hayes that she knew that the police department did not have a pregnancy policy and that she wanted to give the Chief and the Town sufficient time to make an accommodation within the department for her pregnancy. Id at ¶ 9. Malloch told Hayes that her approximate due date was August 10, 2007. Id. at ¶ 11. Malloch also told Hayes that her plan was to work until the day she had her baby. Id. at ¶ 12. Malloch also indicated that she wanted an accommodation so that she would not have to be patrolling in a cruiser until the end of her pregnancy. Id. at ¶ 13. At the time she spoke to Hayes in early January, 2007, Malloch did not have a specific date in mind when she wanted to stop patrolling in a cruiser. Docket # 20-2 at 10. Malloch testified that her best memory was that she also suggested to Hayes at this meeting that she could be reassigned to duty in the station. Docket # 20-2 at 26. Hayes responded that the police department did not

---
[1] Citations throughout are to the pagination of the Court's electronic docketing system, rather to the internal pagination of pleadings and exhibits themselves. The Court notes that rather than responding paragraph-by-paragraph to the movants' Rule 56.1 Statement of Undisputed Material Facts, Malloch has submitted her own competing Rule 56.1 Statement, which does not necessarily address each factual assertion raised by the movants. Factual assertions in the movants' Rule 56.1 which are not directly contradicted by Malloch's own Rule 56.1 statement are treated herein as admitted for purposes of the motion.

have a light-duty policy, and that light duty was for injured officers, not pregnant officers. Docket # 20 at ¶¶ 14-15. Hayes also told Malloch that he wanted to speak with the Town's Human Resources person about her situation. Id. at ¶ 16. Hayes sought and received from Malloch permission to discuss the fact that she was pregnant with Barron. Docket # 20-2 at 12.[2]

Approximately a week later, Malloch attended a meeting with Hayes and Barron. Docket # 20 at ¶ 17. Lieutenant Sweeney also attended the latter portion of the meeting. Docket # 17 at ¶ 9. Hayes wanted Barron to answer any questions Malloch had and to apprise him of procedures he should follow. Id. at ¶ 7. Barron had previously met with at least one other Town employee to discuss her pregnancy and her possible entitlements with regard to leave. Id. at ¶ 8.

During the January 8, 2007 meeting, Malloch asked how she could get out of the police cruiser and indicated that she was hoping for some union contract discussions and that some accommodation would be made for her when she could no longer work in the cruiser. Id. at ¶¶ 9-10. Malloch mentioned the possibility of light duty or a temporary duty change. Id. at ¶ 10. Barron also told Malloch that she should file for Family Medical Leave, that she would then have sixteen weeks of leave and that the leave could be taken before or after the birth of the baby. Id. at ¶ 25. Barron told Malloch that if there was a problem with her working during her

---

[2] Where Malloch's factual assertions in opposition to the motion conflict with her own sworn deposition testimony, the Court is not obliged to accept those assertions as true or to deem them to be disputed. See Torrech-Hernandez v. General Elec. Co., 519 F.3d 41, 47 (1st Cir.2008) (citing Abreu-Guzman v. Ford, 241 F.3d 69, 74 (1st Cir.2001) ("a party opposing summary judgment may not manufacture a dispute of fact by contradicting his earlier sworn testimony")). For example, Malloch has asserted in opposition to the motion (and at the hearing) that it was harassing for Hayes to reveal her pregnancy to Barron when she had told Hayes that the fact of her pregnancy was confidential. In her deposition testimony, however, she testified that Hayes sought and received permission from her to reveal her pregnancy to Barron before doing so. Docket # 20-2 at 12.

pregnancy, her doctor would be the one to make that determination and to let the Town know. Docket # 17 at ¶ 20. Barron considered some of Malloch's questions to be premature, given that Malloch had not yet seen a doctor and that it was early in her pregnancy. Id. at ¶ 19. Malloch told Barron that she was confident that her doctor would write any kind of note that was necessary. Id. at ¶ 21. After Malloch expressed her confidence that she could obtain whatever doctor's note was necessary, Barron told Malloch that as a condition of a leave of absence, "our Town physician would have the option of confirming what her doctor might have to say." Id. at ¶ 22 (citing Docket # 17-5); Docket # 20 at ¶ 20. Malloch objected to the idea of seeing a Town doctor in relation to her pregnancy. Docket # 17 at ¶ 23 (citing Docket # 17-5). Malloch testified that the meeting was "mildly" heated or confrontational and that she didn't recall anyone becoming defensive. Docket # 20-2 at 14. Hayes' only contribution to the meeting was to state that the meeting was intended to be informational, and not to create policy. Id.

After the meeting, Hayes gave FMLA forms to Malloch. Docket # 20-2 at 14. Malloch asserts that following that meeting, Hayes did not talk to her when he saw her in the hallway for approximately three weeks. Id. at 15-16. She felt afraid of him because he was her boss and he didn't want to talk to her. Id. at 15. She felt that the reason that he was not speaking to her was related to her pregnancy. Id. at 16. After approximately three weeks, Hayes and Malloch met in his office "so that [they] could speak again because it was very uncomfortable." Id. at 16. Malloch does not recall who initiated the meeting. Id. Malloch told Hayes that she was not trying to cause a problem, but wanted to have a family like everybody else in the department has a family. Id. Hayes told Malloch that he was not trying to give her a hard time and that "we have to set something up here as far as when the FMLA forms [sic] and when you're going to go out,

4

what's going to happen." Id. Hayes seemed to acknowledge that he had not been talking to her. Id. He urged her to get the FMLA forms filled out, and she agreed to do so. Id. He was aware that Malloch had contacted the union president and told her that the union did not want to help her. Id. at 16-17. At the conclusion of this meeting, Malloch and Hayes emerged on speaking terms. Id. at 16.

Between approximately the beginning of February and mid-April, 2007, Malloch received approximately five emails from Hayes and had five conversations with him, concerning her pregnancy. Id. at 22; See, e.g., Docket #s 17-7, 17-8. Malloch felt very upset and stressed by these communications. Docket # 20-2 at 22. After receiving one of Hayes' emails, Malloch asked Detective Owens to speak to Hayes on her behalf. Id. at 23. She told Owens that "considerations have been made for other people" and the she didn't understand why it couldn't be done for her. Id. Owens reported back that Hayes said that it wasn't his problem. Id.

On April 3, 2007, Malloch wrote a letter to Hayes in which she told him that her current plan, subject to her doctor's advice, was to work in the cruiser until approximately May 19, 2007. Docket # 17-9. She added that thereafter, "as has happened in the past," she was "asking for consideration of some type for a reassignment of duties within the police department for approximately 30-45 working days." Id. Malloch also stated that following the reassignment (if granted), she would use any comp time, vacation time, or sick time she had available. Id. Following the depletion of saved time, she would apply for FMLA benefits or benefits under state law. Id. She further stated that her goal was to keep her job and to receive a paycheck for as long as possible so she could pay her expenses. Id.

Hayes passed Malloch's April 3, 2007, letter to the Town Administrator, along with his

own cover letter seeking the Board of Selectmen's position vis-a-vis Malloch's requests and advising them that he would act accordingly. Docket # 17-10. In doing so, Hayes noted that "[t]here is no provision in the current contract for modified or light duty for pregnancy or other issues where an officer might be out due to non-job related circumstances." Id.

Shortly after Malloch sent her April 3, 2007, letter to Hayes,[3] Malloch made an overture to the union president, Dan Salvucci, similar to that she had made to Detective Owen. Docket # 20 at ¶ 47; Docket #20-2 at 24. In that conversation, she listed things she could do if she was reassigned to duty inside the station, with the expectation that Salvucci would relay them to Hayes. Docket # 20-2 at 26. A conversation took place between Hayes and Salvucci and Malloch testified that it appeared to her afterwards that Salvucci had not accurately relayed to Hayes what she said. Docket # 20-2 at 25-26.

Soon thereafter, Malloch was summoned to another meeting, with Hayes and Lt. Sweeney. Docket # 20 at ¶¶ 48-49. Lt. Sweeney said that he was upset with Malloch after hearing about the conversation between Hayes and Salvucci. Docket # 20-2 at 25. The Lieutenant was concerned about something Malloch had purportedly said to Salvucci about an issue related to firearms licensing paperwork, only tangentially related to Malloch's requests. Id. When Malloch explained, the Lieutenant was satisfied by her explanation and took no further part in the meeting. Id. Thereafter, Hayes brought up Malloch's failure to complete the FMLA forms as requested, asked when the baby was due, and said, and "you can't keep working in the

---

[3] The exact sequence of events among Malloch's overture to Owens, her letter to Hayes, and her overture to Salvucci is not certain, but Malloch testified that "all this took place in a short amount of time," that her overture to Owens preceded the letter, and that she believed her conversation with Salvucci took place after the letter. Docket # 20-2 at 24.

cruiser . . . what am I going to do with you if your gun belt doesn't fit?" Id. Malloch found this meeting to be angry and confrontational. Id. at 27. Hayes was "on the louder end of the voice range," although he was not yelling. Id. at 26. Both men seemed angry (with the Lieutenant's anger confined to the unrelated issue described, supra). Id. at 27. Malloch believed that it was inappropriate and intimidating for Hayes to demand her due date, and by this she referred to the fact of his asking, rather than to his tone or the way he spoke to her. Id. at 27. She felt it was inappropriate for Hayes to ask her due date because "I kind of felt like I gave him an approximate date. That was my own information. If I wanted to impart that, the exact due date, then that was mine." Id.

Malloch made several suggestions as to what work she could perform other than working in a police cruiser. For example, she suggested to Hayes that she could be the officer who went to local businesses to pick up the proceeds of a bond drive, as was typically done every May. Docket # 20 at ¶ 57. In past years, other officers covered the shifts of the officer who collected bond drive proceeds. Docket # 20-2 at 29. Hayes rejected the idea, "in case something happened to [Malloch] while doing that." Id. Hayes suggested that he would see if Malloch could work at some other Town position (such as in the School Department, at the same salary) so that she could get a paycheck throughout her entire pregnancy. Docket # 17 at ¶ 32; Docket # 20-2 at 29-30. Malloch rejected that idea because she wanted only a police department reassignment and did not want to be working in a position not covered by her union contract. Id.

On April 14, 2007, Malloch was injured in an automobile accident while in her cruiser. Docket # 17 at ¶ 39. She went on Injured-on-Duty status, pursuant to M.G.L. c. 41, § 111F. Id. at ¶ 43. From the time that Malloch informed Hayes of her pregnancy, until her April 14, 2007,

7

accident, she had been working in her normal capacity in a police cruiser. Id. at ¶ 27.

On April 23, 2007, the Town Administrator responded to Hayes' memorandum (forwarding Malloch's request for an accommodation), stating that Hayes should ask the Union whether it wished to seek and negotiate for "an appropriate light duty category." Docket # 17-11.[4] On the same day, Hayes responded that he spoke with the union's president, Dan Salvucci, who told him that the union did not wish to negotiate a light duty category in the current contract, and that "if the Town wants to do something for Officer Malloch regarding her pay or time off during the pregnancy that is fine with the Hanover police union." Id.

Malloch remained on Injured On Duty status throughout the remainder of her pregnancy. Docket # 17 at ¶ 48. Malloch gave birth on August 24, 2007. Docket # 20-2 at 41. She returned to work as a police officer on December 15, 2007, and had remained on Injured on Duty status from the day of her accident until her return to work, without utilizing any leave, accumulated time, or other benefits related to her pregnancy. Id. Malloch received her normal pay during her time on Injured On Duty Status, with the exception that state taxes were not withheld. Id.

In the period between Malloch's April 14, 2007, accident and June 6, 2007, Hayes made three phone calls to Malloch. Id. at 46. Two resulted in voicemails concerning authorizations for her treatment and paperwork related to the Injured on Duty status. Id. He also expressed the wish that she would be better and return to work soon, and expressed surprise about the length of

---

[4] Although Malloch was by this time already out of work on Injured-On-Duty status, a reasonable inference from the record is that it was not yet known to the decisionmakers what the duration of her injury would be, and that she would remain on that status throughout her pregnancy.

8

her course of treatment. Id. It is customary and routine for the Town to receive periodic updates from a physician for a police officer who is out on Injured on Duty status, and Chief Hayes had done so for other officers. Docket # 17 at ¶¶ 45-46.[5] Malloch testified that Hayes' demeanor was "not very happy" and that she believed he wanted her to return to work.[6] Docket # 20-2 at 46.

Malloch testified that the stress caused by Hayes' actions caused her to experience elevated blood pressure during her pregnancy and to not gain sufficient weight. Docket # 20-2 at 52. She felt that it took the joy out of her pregnancy and made it "nothing other than a hassle." Id.

Malloch did not file any union grievances concerning the Defendants' handling of her pregnancy. Docket # 20-2 at 33. On February 27, 2008 she filed her Complaint in the Plymouth Superior Court, which the Defendants removed to this Court on March 13, 2008. Docket # 1.

## II.  DISCUSSION

### Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[5] Although Malloch disputes this assertion (See, Docket # 20 at ¶ 79, "[o]ther officers have been out injured and Hayes never questioned their medical providers or harassed the other officers about the nature of their out-injured status"), the citation to the record does not support the factual assertion by reference to competent evidence (Q: "how do you know the Chief didn't follow up with their treatment?" A: "They just – again, office gossip").

[6] Malloch asserts that additional facts (concerning, inter alia, Hayes' contact with her medical providers) are undisputed and material which are supported by citations to record evidence which is not itself competent evidence (for example, because it is comprised of hearsay statements). See, e.g., Docket # 20 at ¶¶ 76-78, 80, 86.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rogan v. City of Boston, 267 F.3d 24, 26 (1st Cir.2001) (citing Fed. R. Civ. P. 56(c)). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir.1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Moreover, the Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir.1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir.2009).

Hostile Work Environment

In Count I of her Complaint, Malloch alleges that the Defendants created a hostile work environment and violated the provisions of M.G.L. c. 151B, § 4 (4A). Docket # 1-2 at ¶ 52. That statute provides in relevant part that "[i]t shall be an unlawful practice . . . [f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter." M.G.L. c. 151B, § 4 (4A). In her hostile work environment claim, the right under M.G.L. c. 151B with which Malloch alleges the Defendants have interfered is her right to be free from discrimination on the basis of her gender, and to be free from discrimination on the basis of a perceived disability (i.e., pregnancy).

Even viewing the record in the light most favorable to Malloch, the record does not provide a sufficient basis from which a reasonable fact finder could conclude that Malloch was

10

subjected to a hostile work environment. A court reviewing a hostile work environment claim is to assess whether a plaintiff "was subjected to severe or pervasive harassment that materially altered the conditions of [her] employment." Thompson v. Coca-Cola Co., 522 F.3d 168, 179 (1st Cir.2008) (citing Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir.2005)) (citing Faragher v. City of Boca Ratón, 524 U.S. 775, 786 (1998)).[7] To sustain this claim, Malloch must demonstrate that "the harassment was sufficiently severe or pervasive so as to alter the conditions of [her] employment and create an abusive work environment" and that the "[gender-based] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and [that Malloch] in fact did perceive it to be so." Id. (quoting Douglas v. J.C. Penney Co., Inc., 474 F.3d 10, 15 (1st Cir.2007). Under Massachusetts law, a hostile work environment is one that is "pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, [and that] poses a formidable barrier to the full participation of an individual in the workplace." Id. at 180 (quoting Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 532 (2001)) (quoting College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 162 (1987)). The environment must be sufficiently hostile or abusive in light of all of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Faragher, 524 U.S. at 787-88) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). The thrust of the hostile work environment inquiry

---

[7] Title VII and Chapter 151B share the same basic framework for evaluating whether a plaintiff has been subjected to a hostile work environment. See Rosemond v. Stop & Shop Supermarket Co., 456 F.Supp.2d 204, 212 (D.Mass.2006) (Ponsor, J.).

11

"is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Noviello, 398 F.3d at 92.

The question of whether a plaintiff was subjected to an objectively hostile environment should generally be determined by the finder of fact, "assess[ing] the matter on a case-by-case basis, weighing the totality of the circumstances." Id. at 94. The court's function "is one of screening, that is, to determine whether on particular facts, a reasonable jury could reach such a conclusion." Id. Summary judgment remains, however, "an appropriate vehicle for policing the baseline for hostile environment claims." Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir.2006).

"To an objective observer familiar with the daily workplace interactions that occur between supervisors and their employees, as well as the clashes of personality that are the predictable byproducts of the human condition," Malloch's complaints would appear for the most part unremarkable. See, e.g., Hall v. FMR Corp., 667 F.Supp.2d 185, 201 (D.Mass.,2009) (Stearns, J.) (finding no hostile work environment where a supervisor, inter alia: (1) watched employee continuously to monitor her comings and goings; (2) sent email reminders about completing entries in time tracking software; (3) chose other employees to do special work projects; (4) asked her to do work when he knew she was occupied with other projects; (5) frowned at her; (6) sneaked up on her to see if she was working; (7) sat sideways in a one-on-one meeting rather than looking directly at her). See also Pomales, 447 F.3d at 84 (enumerating cases deemed insufficient to establish a hostile work environment based on sexual harassment, including an instance of five sexual advances by a supervisor).

In opposing summary judgment on Count I, Malloch does not identify the specific factual

12

allegations which would support a claim of a hostile work environment. Instead, Malloch argues in conclusory fashion that the entire course of Hayes's conduct,[8] from the date she told Hayes she was pregnant until the present, was hostile, evidenced by unspecified statements and unspecified conduct. Docket # 21 at 11-12. The record does not support this assertion, either in terms of the relevant time frame, or in terms of the severity of the conduct alleged.

First, the relevant time period is more circumscribed than Malloch asserts. Hayes resigned his position in July, 2008, and so he could not have contributed to a hostile work environment at any point over the past two and one-half years, as asserted in the briefing, nor has Malloch made any factual allegations concerning this time period. Docket # 17-3 at 46.[9] Malloch has conceded that she had no difficulty with Hayes (or any other Town employee) prior to informing Hayes of her pregnancy. Docket # 20-2 at 8-9. The relevant time period then is

---

[8] Although Malloch refers generally to the "defendants' conduct" with regard to her hostile work environment claim (See Docket # 21 at 11), she does not argue any specific actions by Barron supportive of her claim, and in any event her contact with Barron was limited to a single meeting on January 8, 2007. The allegations concerning Barron's conduct at that meeting (although they might conceivably support liability on another theory) do not rise to a level sufficient to support liability for a hostile work environment because they were not pervasive and did not pose a formidable barrier to Malloch's participation in the workplace. See infra at 14-15, regarding Defendant Hayes.

[9] Similarly, Malloch herself was not present in the workplace between April and December, of 2007, and (without so deciding) the Court questions whether the Defendants' conduct can pose a formidable barrier to Malloch's full participation in the workplace when she is herself absent from the workplace for unrelated reasons. Allegations, for example, that Hayes improperly contacted Malloch regarding the duration of her leave may allege violations of state law concerning retaliation or concerning the handling of her leave status (governed by M.G.L. c. 151B and c. 41, §111F), but they do not necessarily implicate the atmosphere in a workplace in which Malloch was (for unrelated reasons) not present and attempting to work, particularly where Malloch has not alleged that those actions prevented her from returning to the workplace. Nevertheless, in this case the claim fails for the reasons discussed infra, even when the claim includes the allegations arising during this time period.

13

from Malloch's January, 2007, notification to Hayes of her pregnancy until Hayes' retirement in July, 2008.

More importantly, the conduct attributed to the Defendants and the resulting impact alleged by Malloch are insufficient to support liability. As best as the Court can determine, the conduct which Malloch alleges created a hostile work environment consists of: (1) Hayes' and Barron's statements at the January 8, 2007, meeting; (2) Hayes' comment to Malloch questioning what he would do with her once her gun belt no longer fit;[10] (3) Hayes' not speaking to Malloch for a period of three weeks following the January 8, 2007, meeting; (4) Hayes' repeatedly urging Malloch to complete FMLA forms; (4) Hayes' demeanor at the subsequent meeting among Hayes, Malloch and Sweeny; and (5) Hayes' checking with Malloch directly and with her medical providers concerning her recovery from her injury.

Hayes' demeanor in his interactions with Malloch never approached the level of being physically threatening. Malloch described it as perhaps mildly confrontational in the first meeting, and at an increased volume (but not to a level she would characterize as yelling) in the second. Hayes' comment about what he would do with Malloch when her gun belt no longer fit is merely a single offensive utterance. Hayes' actions in giving Malloch "the silent treatment" for a period of three weeks may be rude behavior, but it was of limited duration and was not objectively hostile or abusive. The record is insufficient to support the conclusion that Hayes' actions in checking with Malloch and her medical providers concerning her Injured on Duty status were anything more than the duties imposed upon him by law. Likewise, Malloch cannot

---

[10] As noted previously, additional disparaging comments alleged to have been made by Hayes concerning Malloch's pregnancy are not properly part of the factual record.

demonstrate that the Defendants' actions posed a barrier to her full participation in the workplace, or unreasonably interfered with her work performance, because the record clearly establishes that she in fact performed her regular duties satisfactorily and without interruption, both before her accident and after her return to work.

Discrimination Claims

In Counts II and III, Malloch asserts that the defendants discriminated against her on the basis of her perceived disability (i.e., her pregnancy) (Count II), and that they refused to make reasonable accommodations for her pregnancy (Count III).

Each of these claims fails first because whatever theoretical discussions were held between Malloch and the Town – which Malloch found to be unsatisfactory – the fact remains that an intervening circumstance (i.e., her automobile accident, and subsequent Injured-on-Duty leave, which encompassed the entire period during which she would have sought an accommodation) rendered her request for accommodation moot. Up until the date of her accident, April 14, 2007, Malloch had continued to work her normal shift in a cruiser and did not require any accommodation whatsoever. Malloch does not allege that she was unable to perform the functions of her job without accommodation at any point prior to her accident, and there is no record evidence that the Town perceived her as unable to do so. The Town was never forced to decide how it would handle Malloch's request for accommodation because the circumstances triggering the need for an accommodation never came to fruition. See, infra, at 16-17. Malloch made a request to Hayes for an accommodation which she anticipated would be necessary at some point in May, 2007. Hayes sought guidance from the Town Administrator, who advised seeking input from the Union as to its position. The Union declined to take a position and

effectively left the issue to be resolved by the Town. But the Town was never called upon to make the decision because of Malloch's April 14, 2007, accident, and because she never returned from Injured On Duty Status until her pregnancy no longer presented the need for accommodation.

To establish the violation of G.L. c. 151B, § 4(16) alleged in Count II, Malloch must prove that (1) she is handicapped within the meaning of the statute; (2) she is a "qualified handicapped person" (meaning that, notwithstanding the handicap, she can perform the essential functions of the job, either (a) without accommodation, or (b) with a reasonable accommodation provided by the employer, subject to the statutory qualification that the accommodation not pose an undue hardship upon the employer); and (3) the handicap was the cause of an allegedly unlawful discriminatory action. See New Bedford v. Massachusetts Commn. Against Discrimination, 440 Mass. 450, 461-462 (2003) (quoting from G.L. c. 151B, § 4(16)).

"While in some cases pregnancy may render an individual disabled, this disability must be demonstrated; pregnancy is not, per se, a disability." McDonnell v. Certified Engineering & Testing Co., Inc., 899 F.Supp. 739, 753-753 (D.Mass.1995) (Woodlock, J.). Malloch's pregnancy may, of course, have developed in a manner that rendered her handicapped (as her April 3, 2007, letter to Hayes contemplated, with Malloch anticipating reliance on her doctor to determine if and when she would be unable to work in a police cruiser), but the record is clear that Malloch's pregnancy never in fact reached such a stage prior to her April 14, 2007, accident.

Count III in fact recites that [Malloch] was capable of performing the essential function of her position with a reasonable accommodation for later part [sic] of her pregnancy." Docket # 1-2 at ¶ 56. Because Malloch was no longer seeking an accommodation when the later part of

16

her pregnancy arrived (the accident having intervened), she cannot recover on this claim.[11]

Conspiracy, Counts IV and V

Count IV alleges a conspiracy by Hayes and Barron to deprive Malloch of her constitutional rights in violation of 42 U.S.C. ¶ 1985(3). Count V alleges the same conspiracy, in violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H and I.

Malloch cannot prevail on either of these conspiracy claims. A civil conspiracy claim under section 1985(3) requires a showing of four elements: (1) a conspiracy, (2) a conspiratorial purpose to deprive a person . . . of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege. See Strahan v. Frazier, 156 F.Supp.2d 80, 101 (D.Mass.2001) (Young, J.) (citing Aulson v. Blanchard, 83 F.3d 1,3 (1st Cir.1996)) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-103 (1971)). The second element requires that " 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus' motivated the alleged conspirators. Griffin, 403 U.S. at 102. The record is devoid of evidence of a conspiratorial purpose. Moreover, the Court's has found that the Defendants' actions did not support liability on the other claims, and Malloch therefore cannot demonstrate a conspiracy to deprive her of rights due to her.

In addition to failing for the same reasons applicable to Count IV, Count V also is not actionable because the only substantive right which the Plaintiff has alleged the Defendants have

---

[11] The record evidence does not support the assertion in the Complaint that the defendants insisted that Malloch take an immediate unpaid leave as the only recourse for dealing with her pregnancy. See Docket # 1-2 at ¶ 57.

violated are her rights under M.G.L. c. 151B.[12]  Where a statute provides a specific remedy, an action under a more general provision of law or the Massachusetts Declaration of Rights will not lie. See Daley v. Wellpoint Health Networks, Inc.,146 F.Supp.2d 92, 104-105  (D.Mass.2001) (Stearns, J.) (citing Charland v. Muzi Motors, 417 Mass. 580, 582 (1994); Agin v. Federal White Cement, Inc., 417 Mass. 669, 672 (1994)).  Here Malloch's remedy is provided by Chapter 151B, and she has pursued such claims in Counts I, II and III.  The MCRA is "a more general provision of law" than c. 151B, and Malloch is thus left to the exclusive remedies of Chapter 151B.  Id.

III.   CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgement (Docket # 15) is ALLOWED.

SO ORDERED.

　　　　　　　　　　　　　　　　　　　　　　　　　/s / Leo T. Sorokin
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

---

[12]  While the Complaint refers to violations of rights guaranteed by the United States Constitution, no argument to that effect has been made by Malloch in opposing summary judgment.